Peter Goldstein, Esq., (SBN 6992)
**PETER GOLDSTEIN LAW CORP**
10795 West Twain Avenue, Ste. 110
Las Vegas, Nevada 89135
Telephone:   (702) 474-6400
Facsimile:    (888) 400-8799
peter@petergoldsteinlaw.com

*Attorney for Plaintiffs*
KAREN THOMPSON, individually and as co-
Special Administrator of the ESTATE OF
JUSTIN THOMPSON; and
RICK THOMPSON, individually and as co-
Special Administrator of the ESTATE OF
JUSTIN THOMPSON;

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA (RENO)

| | |
|---|---|
| KAREN THOMPSON, individually and as Co Special Administrator of the ESTATE OF JUSTIN THOMPSON; RICK THOMPSON, individually and as Co Special Administrator of the ESTATE OF JUSTIN THOMPSON, FRED WAID, Co-Special Administrator, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF WASHOE the legal entity controlling the WASHOE COUNTY SHERIFF'S OFFICE; SHERIFF  CHUCK ALLEN; WASHOE COUNTY SERGEANT RANDY HILL; WASHOE COUNTY DEPUTY JOEL HOSPODAR; WASHOE COUNTY DEPUTY TREVOR SOLANO; WASHOE COUNTY DEPUTY KIMBERLY PEEK; WASHOE COUNTY DEPUTY KENNETH CAMERON; WASHOE | Case No. 2:17-CV-00333-MMD-VPC <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES** <br><br> **DEMAND FOR JURY TRIAL** <br><br> 1. Unreasonable Search and Seizure—Excessive Force violation of the 4th Amendment and 14th  Amendment (42 U.S.C. § 1983) <br> 2. Unreasonable Search and Seizure—Denial of Medical Care  (42 U.S.C. § 1983) <br> 3. Municipal Liability for Unconstitutional Custom, Practice, or Policy violation of the 4th Amendment and 14th Amendment (42 U.S.C. § 1983) <br> 4. Substantive Due Process— violation of the 14th Amendment (42 U.S.C. § 1983) <br> 5. Battery (Wrongful Death) |

COUNTY DEPUTY PAUL
HUBBELL; WASHOE COUNTY
DEPUTY BRAD MUSTAFA;
WASHOE COUNTY DEPUTY
NICOLAS TONE; WASHOE
COUNTY DEPUTY PETER MICHEL
and DOES 1-10, inclusive,

Defendants.

6. Negligence (Wrongful Death)
7. Due Process—Interference with
Familial Relationship (42 U.S.C. §
1983)
8. Violations of 42 USC § 12101, *et
seq.* (Americans With Disabilities Act)

**INTRODUCTION**

1. This civil rights and state tort action seeks general, compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and Nevada state laws in connection with the death of Decedent Justin Thompson while in the custody of Washoe County Sheriff's Office ("WCSO"). Decedent was rendered brain dead on August 4, 2016 due to the actions and inactions of all Defendants as described herein and subsequently declared dead on August 7, 2016.

**PARTIES**

2. At all relevant times, Decedent JUSTIN THOMPSON (hereinafter "DECEDENT" or JUSTIN THOMPSON") was an adult individual residing in the County of Washoe, Nevada.

3. At all times herein mentioned, Plaintiff KAREN THOMPSON was an individual residing in the County of Kern, California, and is the natural mother of DECEDENT. Plaintiff KAREN THOMPSON sues in her individual capacity and as Co-Special Administrator of the ESTATE OF JUSTIN THOMPSON. The Notice of Entry of Order for her appointment as the Co-

Administrator of the Estate of Justin Thompson was filed on February 19, 2017. The Nevada resident co-administrator is Fred Waid, attorney at law.

4. At all times herein mentioned, Plaintiff RICK THOMPSON was an individual residing in the County of Kern, California, and is the natural father of DECEDENT.  Plaintiff RICK THOMPSON sues in his individual capacity and as Co-Special Administrator of the ESTATE OF JUSTIN THOMPSON.

5. At all relevant times, Defendant COUNTY OF WASHOE ("COUNTY") is and was a government subdivision existing under the laws of the State of Nevada with the capacity to be sued.  COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the WASHOE COUNTY SHERIFF'S OFFICE ("WCSO") and its agents and employees.  At all relevant times, COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the WCSO and its employees and agents complied with the laws of the United States and of the State of Nevada.  At all relevant times, COUNTY and WCSO were the employers of all individually named Defendants and DOES 1-5 as yet unidentified Sheriff Deputies and other personnel and DOES 6-8 supervisory personnel.

6. Defendant SHERIFF CHUCK ALLEN ("ALLEN") is the Sheriff of Washoe County as he was at all times relevant. He is sued in his individual capacity.

7. At all relevant times, WCSO was the employer of Defendants DOES 1 through 5 ("DOE DEPUTIES") who were WCSO Sheriff Deputies, and DOES 6 through 8 ("DOE SUPERVISORS") who were managerial, supervisorial, and policymaking employees of the WCSO. WCSO is a department of Defendant COUNTY and operates the Washoe County Sheriff Office jail.

8. At all relevant times WCSO SERGENT RANDY HILL(hereinafter HILL); DEPUTY JOEL HOSPODAR (hereinafter HOSPODAR), DEPUTY TREVOR

SOLANO (hereinafter SOLANO), DEPUTY KIMBERLY PEEK (hereinafter PEEK), DEPUTY KENNETH CAMERON (hereinafter CAMERON), DEPUTY PAUL HUBBELL (hereinafter HUBBELL), DEPUTY BRAD MUSTAFA (hereinafter MUSTAFA), DEPUTY NICOLAS TONE (hereinafter TONE), DEPUTY PETER MICHEL (hereinafter MICHEL) were duly authorized employees and law enforcement officers employed by the Washoe County Sheriff's Office and acting under color of law. All the above individual are sued in their individual capacity and were subject to oversight and supervision by COUNTY's elected and non-elected officials.

9.  At all relevant times, Defendants DOES 1-5 were duly authorized employees and agents of COUNTY, who were acting under color of law within the course and scope of their respective duties as sheriff deputies and with the complete authority and ratification of their principal, Defendant COUNTY.

10. At all relevant times, Defendants DOES 1-5 were duly appointed deputies and/or employees or agents of COUNTY, subject to oversight and supervision by COUNTY's elected and non-elected officials.

11. In doing the acts and failing and omitting to act as hereinafter. Defendants DOES 1-5 and 6-8 were acting on the implied and actual permission and consent of COUNTY.

12. At all times mentioned herein, each and every COUNTY defendant was the agent of each and every other COUNTY defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every COUNTY defendant.

13. The true names of defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and

capacities of these defendants when they have been ascertained.  Each of the fictitiously named defendants is responsible in some manner for the conduct and liabilities alleged herein.

14. All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

15. DOES 1-10 are sued in their individual capacity for damages only.

## JURISDICTION AND VENUE

16. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution and 42 USC § 12101. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.  This Court has supplemental jurisdiction over Plaintiffs' state claims.

17. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, Washoe County, Nevada.

## FACTS COMMON TO ALL CAUSES OF ACTION

18. DECEDENT was in the COUNTY's custody after being arrested on August 3, 2016 by the Reno Police Department.

19. DECEDENT was taken to Renown Regional Medical Center (hereinafter

COMPLAINT FOR DAMAGES

"Renown") in the early evening of August 3, 2016 for treatment of injuries including abrasions to his head and lower extremities resulting from an altercation with the police during his arrest.

20. Emergency Department physicians at Renown allegedly recommended he take a CT scan and x-rays to rule out further injuries, but DECEDENT allegedly declined.

21. The medical records from Renown for that visit state contradictorily that DECEDENT was capable of declining the diagnostic imaging despite also noting both a psychiatric disorder in his medical history and describing one of his chief complaints as being "off psych meds."

22. He was discharged into the WCSO's custody and incarcerated at the Washoe County Jail.

23. DECEDENT remained in a holding cell for 24 hours and 38 minutes. From 3:54 PM on August 3 until 4:32 PM on August 4. DECEDENT was dressed only in shorts, he had no shoes, socks or shirt, and the only things inside of his cell were a middle toilet and sink.

24. While in his cell, DECEDENT lay on the floor, curled up in a fetal position, clutching his head and wrapping toilet paper around his head and his ears, drawing on the walls with his blood.

25. After DECEDENT was alone in his cell for more than 24 hours, becoming increasingly more distressed, the defendants sent in deputies in tactical gear wearing helmets and riot gear to violently extract him from his cell.

26. DECEDENT was taken back to Renown Regional Medical Center.

27. The medical notes for the 2nd visit state that the staff physician requested a CT scan of DECEDENT's brain due to bizarre behavior. The notes also indicate that the "guards" stated DECEDENT had been somewhat agitated and combative throughout the day. The notes also state that DECEDENT stopped

6

1   talking and "distended off into space" for the rest of the examination.

2   28. DECEDENT was given Haldol for his episodes of agitation.

3   29. Haldol makes persons docile and DECEDENT was not a physical threat to

4       any of the deputies when he was taken back to the booking room in a

5       wheelchair. Haldol is also known for its extrapyramidal side effects that cause

6       patients to suffer from movement disorders resulting from taking the drug.

7   30. DECEDENT was described as having intermittent lucidity. He was given a

8       CT scan of the brain. Radiology notes found no intracranial mass effect or

9       acute hemorrhage.

10  31. DECEDENT was discharged back to the jail at approximately 7:53 pm on

11      August 4, 2016.

12  32. WCSO policy 300.6 provide special consideration for inmates who exhibit

13      among other characteristics, irrational behavior or who require protracted

14      physical encounter with multiple deputies to be brought under control. It also

15      specifically provides that such inmates may be at an increased risk of sudden

16      death. Calls involving these persons should be considered medical emergencies

17      and deputies should request medical assistance as soon as practicable. WCSO

18      policy 720.152 states all inmates will be checked upon arrival at the facility

19      and states that medical screening processes will be delayed if the inmate is

20      combative, uncooperative or unable to effectively answer questions due to

21      intoxication. Clearly, decedent was unable to respond to many questions and

22      did not receive a medical or mental health screening by WCSO and was

23      diagnosed by Renown with intermittent mental lucidity. The mandatory

24      exception to the County's normal medical screening procedures applies only if

25      the screening poses a substantial risk of serious harm to those with certain

26      mental illnesses.

27  33. WCSO policy 701.033 states that security cells are used for an inmate whose

28

COMPLAINT FOR DAMAGES

conduct constitutes a threat to themselves and such inmates will be evaluated by a medical staff prior to being placed in the cell. DECEDENT was required to be medically evaluated prior to placement in the cell. Certain of WCSO policies were violated by all DEFENDANTS as described herein and as seen in the video footage. Additionally, Defendants violated WCSO policy 710.177 which provides that during the management of a combative inmate a deputy is to use a handheld camera to video the interaction with deputies, Defendants also violated WCSO policy 715.226 which requires deputies contact central command in the event of a medical emergency.

34. Moreover, Decedents behavior was observed by deputies for nearly 24 hours prior to the second Renown Hospital visit which should have ensured that the Defendants who responded to him used nationally recognized mental health protocols. Those deputies knew or should have known that Decedent was treated with psychotropic drugs and this information should have been shared with other deputies.

35. Deputies trained in Crisis Intervention Training should and would have attempted to slow down interactions with decedent and speak calmly and assuredly in an attempt to get his voluntary compliance. The sheer number of deputies responding to Decedents behavior was excessive and the resulting dog piling onto Decedent was excessive and an overreaction. Since Decedent was handcuffed, in a wheelchair and inside the jail it was not necessary to quickly accomplish administrative booking processes since he was not attempting to escape, nor attacking any deputies.

36. After returning to the WCSO jail, DECEDENT was videotaped. Two hours of footage from the jail inside a cell and in the sally port depict the use of force that led to DECEDENT's death. The footage shows the following facts at the indicated time stamps:

a.  1:45 – DECEDENT was in the booking area.

b.  6:25 – DECEDENT begins rocking in his chair while his mugshot is being taken.

c.  6:45 – DECEDENT tries to stand.

d.  7:30 – DECEDENT is wheeled out and a deputy grabs his head and twists his neck.

e.  7:45 – DECEDENT is brought to the Sally Port.

f.  8:10 – A deputy says "How's this? This feel good?"

g.  8:30 – A spit hood is placed on DECEDENT'S head.

h.  9:26 – DECEDENT says "Fuck you" to a deputy while a knee is in his back.

i.  9:29 – A Deputy puts all his weight on DECEDENT.

j.  9:48 – DECEDENT is rolled over on his back.

k.  10:34 – DECEDENT says that he's not going to bite.

l.  10:37 – DECEDENT says "I can't breathe"

m.  10:39 – A Deputy says, "You're not complying Justin, you're being a dick about the whole thing."

n.  11:11 – A Deputy threatens DECEDENT saying, "If you lash out, I will make sure you remember it."

o.  11:25 – DECEDENT screams. (There are six deputies surrounding him)

p.  12:07 – DECEDENT screams.

q.  13:15 – While being pinned down, DECEDENT says "No. Why are you doing this?" Deputy says "All on you". "You asked for this by your actions."

r.  14:39 – A person asks medical questions of DECEDENT.

s.  15:22 – DECEDENT screams.

t.  15:59 – A Deputy says "Don't fucking grab my hand."

u.  17:24 – A Deputy asks DECEDENT "How long have you been clean for. DECEDENT responds, "A while now."

v.  20:34 – Deputy HOSPODAR says "remember how things went at the hospital"

w.  21:40 – DECEDENT screams. A Deputy says, "Nobody is going to help you. We are the help."

x.  24:24 – A stretcher comes into the room.

y.  25:18 – A taser is pulled out by TONE who kicked DECEDENT while holding the Taser as five people are pinning him down. DECEDENT screams and is dragged towards the mega mover (stretcher), screaming.

z.  27:04 – A deputy states, "What's it going to take for you to stop being stupid?"

aa. 27:19 – A Deputy says, "We own you right now." Twelve deputies are around the DECEDENT.

bb. 28:16 – A Deputy says, "We're going to throw you in a cell and you can sit there and be stupid."

cc. 28:21 – A Deputy asks DECEDENT for full name and other basic questions.

dd. 29:59 – DECEDENT screams. There is unidentified laughter.

ee. 31:54 – DECEDENT has been unable to answer questions and let's out a cry.

ff. 32:06 – DECEDENT sounds like his is asphyxiating. Seven deputies are on top of him.

gg. 32:37 – DECEDENT starts coughing and wheezing, gasping for breath. Deputies continue to say "stop resisting" and "answer the

question" while DECEDENT visibly coughs and wheezes.

    hh. 34:50 – DECEDENT makes two deep gasps. A deputy says "You have to knock this shit off."

    ii. 35:42 – DECEDENT screams. Deputies put him on the stretcher.

    jj. 35:50 – DECEDENT is placed face down on the gurney.

    kk. 36:44 – DECEDENT is taken out of the room. The video switches to the jail cell where deputies flash lights at him.

    ll. 41:30 – Deputies start lifesaving efforts on DECEDENT.

37. As clearly indicated in the footage from the video, DECEDENT'S face and head were covered with a spit hood which is a material that is placed over an inmate's head and secured with an elastic band at the neck. It is designed to prevent the arrested party or inmate from biting or spitting at peace officers.

38. Medically, the use of the spit hood can lead to the asphyxiation, particularly when it is saturated with body fluids, such as sweat and sputum.

39. As seen in the video, the staff and deputies of the jail kicked, kneeled upon, burked (put their body weight on top of DECEDENT so he could not breathe) and applied torturous arm bar holds, and refused Plaintiffs pleas for help.

40. As seen in the video, deputies tortured DECEDENT with their words and actions, taunting him with threats that they own him, calling him an asshole, and telling him that they are his only source of help.

41. As seen in the video, DECEDENT was removed from the wheelchair causing his head to hit the floor. He was turned on his stomach and his shoulders, his legs, feet, and torso were held out. Deputies were saying things such as, "how is this," and "does this feel good?"

42. As seen in the video, DECEDENT was laying still, his wrists were chained to his abdomen and even though he started to writhe in pain, he was told to quit moving and relax.

43. As seen in the video, one deputy swore at him and eight larger deputies knelt firmly on the small of his back even when DECEDENT complained he could not breathe. The deputies' response to the complaint was to tell the DECEDENT that he was not being compliant, and was being a dick about the whole thing.

44. All the Deputies present were concerned about not getting injured by somebody who was clearly not in a position to inflict any injury and clearly unconcerned about DECEDENT'S medical needs.

45. As seen in the video, DECEDENT was forced on his stomach with the spit hood still on his head, which is a position that compromises breathing. This too violated the standard of care owed to him. The above described actions of the deputies violated all WCSO policies enumerated above as well as any regard for human decency. Placing a restrained person on her stomach dangers that person's life by compromising their breathing and is specifically prohibited by Washoe County Sheriff Office policies.

46. A screening nurse begins to request answers to questions such as DECEDENT'S address, date of birth and other non-critical historical questions. The screening nurse was asking questions that had nothing to do with DECEDENT'S mental or physical health. The actions in the video show noncompliance with all the previous enumerated WCSO policies and other state and WCSO policies.

47. Clearly, these questions were not that important nor did they constitute a medical screening. The COUNTY through its individual's employees knew most of the answers and it was perfunctory information that was sought.

48. DECEDENT stated he could not breathe, yet DEFENDANTS did not provide any help or even begin to appreciate the level of danger and harm DECEDENT was experiencing. Moreover, all the individual Defendant deputies named

herein were deficiently trained and/or lacked any proficiency in CPR and other lifesaving skills because they lacked even the most basic fundamental knowledge that persons should not remain on their stomach.

49. DECEDENT was taken back to Renown (for a third time) later that same night (August 4). The notes for that visit indicate DECEDENT became apneic and pulseless and having cardiac arrest. Upon examination, DECEDENT was nonresponsive to tactile, verbal or auditory stimuli. His pupillary and corneal reflexes were absent. He was intubated and put on a ventilator. The notes also indicate that DECEDENT had been fighting with prison guards prior to collapsing. Jail surveillance video shows 6 WCSO employees jumping on DECEDENT and holding him down. DECEDENT could not breathe at that point and went into cardiac arrest. He was declared brain dead at Renown on August 4, 2016.

50. DECEDENT was declared dead on August 7, 2016 according to the death certificate.

51. DECEDENT remained in the hospital on life-support for five days before the Sheriff's Department notified his family and longtime girlfriend on August 9, 2016 that he had been hospitalized violating Washoe County Sheriff office policy 715.234.

52. Plaintiffs made the decision to take him off life support on August 12, 2016.

53. Plaintiffs are residents of Bakersfield, California, and no effort was made to provide any information to them for five days after decedent's death.

54. Sheriff Chuck Allen criticized the deputies' handling of the struggle and stated" I believe anyone (who) watches this video will understand why I was concerned about the handling of this incident. Why I immediately called for an outside investigation. I further, and firmly, believe that some of the actions shown do not reflect the standards of the men and women who work for the

Sheriff's office. Or they are they in keeping with my often expressed expectation that employees from this office will always treat the public we serve with fairness, equality and respect."

55. The Sparks Police Department conducted an independent investigation into decedent's death in February, but found that even though the autopsy report concluded that decedent died from a homicide, there was no criminal liability that could be found against any of the deputies who were present during decedent's death.

56. DECEDENT was one of three men who have died while struggling with deputies inside WCSO jail during the last year.

57. The Washoe County Coroner investigated and determined the DECEDENT's death was homicide. The cause of death was anoxic-ischemic encephalopathy following cardiac arrest due to probable cardiac arrhythmia. An autopsy was performed that made the following findings, among others:

    a. DECEDENT suffered anoxic-ischemic encephalopathy following resuscitation after cardiopulmonary arrest following prolonged physical struggle;

    b. Evidence of injuries including:

        i. Patterned abrasion and healing on DECEDENT's wrists and ankles consistent with restraint (cuffs) application;

        ii. Posterolateral right 10th rib fracture, an atypical location for resuscitation, likely due to blunt trauma;

        iii. A 3 by up to 3/8 inch abrasion on the middle of DECEDENT's forehead;

        iv. Abrasions on DECEDENT's left and right ears;

        v. Abrasions and contusions on DECEDENT's chest and shoulders;

      vi.  Abrasions and contusions on DECEDENTS hands, wrists, forearms and upper arms;

      vii.  Abrasions and contusions on DECEDENT's left and right feet, knees and legs.

58. The coroner's opinions included that DECEDENT's exertion of a violent struggle against restraint by law enforcement was a significant condition contributing to his death. The coroner also opined that the DECEDENT probably would not have experienced cardiac arrest when he did, but for the exertion of violent struggle against restraint by law enforcement and determined the cause of death to be homicide.

59. The Nevada Department of Corrections Administrative Regulation 643 provides that "The goal of Mental Health services in the Department is to provide for the detection, diagnosis, treatment, and referral of inmates with mental health problems, and to provide a supportive environment during all stages of each inmate's period of incarceration."

60. Through a series of acts and omissions evidencing gross negligence, deliberate indifference to the safety and medical needs of DECEDENT, and intentional disregard of WCSO policies and procedures, Defendants COUNTY, WCSO, ALLEN; WCSO; HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL

AND DOES 1-10, inclusive, caused, allowed and enabled DECEDENT's death.

**FIRST CLAIM FOR RELIEF**

**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

**(Both the Estate of Justin Thompson and Rick Thompson and Karen Thompson as Individuals against All Defendants)**

61. Plaintiffs reallege and incorporate all foregoing paragraphs.

62. Defendants' excessive force against DECEDENT on August 4, 2016 after his second visit to Renown deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment. Defendants used excessive force by jumping on DECEDENT, kneeling on him, holding him down and causing him to be unable to breathe and to suffer cardiac arrest. Defendants also obviously beat DECEDENT causing him to suffer abrasions and contusions on his forehead, ears, shoulders, chest, arms, legs, knees and feet, as described in the autopsy report. DECEDENT even suffered a fractured posterolateral right 10th rib, an atypical location for resuscitation, due to blunt trauma. DECEDENT was a pretrial detainee.

63. Defendants COUNTY, WCSO; ALLEN, HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL and Defendants DOES 1-5 integrally participated in DECEDENT'S death or failed to intervene to prevent it.

64. As a result of the excessive force, DECEDENT suffered extreme pain and suffering and eventually suffered a loss of life.

65. Defendants' beating and killing of DECEDENT violated their training.

66. As a result of their misconduct, Defendants all are liable for DECEDENT's and Plaintiffs' injuries, either because they were integral participants in the beating and killing of DECEDENT or because they failed to intervene to prevent these violations.

67. The conduct of the individual Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to

1   individual Defendants only.

2   68. Plaintiffs KAREN THOMPSON, individually, and RICK THOMPSON,

3      individually, are seeking both survival and wrongful death damages under this

4      claim.

5   69. Plaintiff ESTATE OF JUSTIN THOMPSON is seeking survival damages

6      under this claim.

7

8                        **SECOND CLAIM FOR RELIEF**

9   **Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

10               **(The Estate of Justin Thompson against All Defendants)**

11  70. Plaintiffs reallege and incorporate all foregoing paragraphs.

12  71. The denial of medical care by Defendants deprived DECEDENT of his right

13     to be secure in his person against unreasonable searches and seizures as

14     guaranteed to DECEDENT under the Fourth Amendment to the United States

15     Constitution and applied to state actors by the Fourteenth Amendment.

16  72. Defendants denied medical care to DECEDENT by: failing to provide

17     screening and treatment of his obvious psychiatric disorder; providing him

18     with appropriate psychiatric medication at the jail; permitting him to be

19     discharged after his first and second visits to Renown after being arrested on

20     August 3, 2016 when he was clearly not competent to refuse medical

21     treatment; not having decedent examined and treated/screened by a qualified

22     competent mental health professional; by failing to comply with WCSO

23     policies as described above and by engaging torturous,  painful verbal and

24     physical assaults.

25  73. As a result, DECEDENT suffered extreme pain and suffering and eventually

26     suffered a loss of life.

27  74. Defendants knew that failure to provide timely medical treatment to

28

DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

75. Defendants' failure to timely provide medical treatment to DECEDENT was a violation of their training.

76. As a result of their misconduct, all Defendants are liable for DECEDENT's and Plaintiffs' injuries, either because they were integral participants in the beating or because they failed to intervene to prevent these violations.

77. The conduct of Defendants COUNTY, WCSO; ALLEN, HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL AND DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

78. Plaintiffs KAREN THOMPSON, individually, and RICK THOMPSON, individually, are seeking both survival and wrongful death damages under this claim.

79. Plaintiff ESTATE OF JUSTIN THOMPSON is seeking survival damages under this claim.


**THIRD CLAIM FOR RELIEF**

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983) (The Estate of Justin Thompson, and Karen Thompson and Rick Thompson as Individuals Against Defendants COUNTY, WCSO, ALLEN, and DOES 6-10)**

80. Plaintiffs reallege and incorporate all foregoing paragraphs.

81. On and for some time prior to August 7, 2016 (and continuing to the present date) Defendants COUNTY, WCSO, ALLEN, HILL; HOSPODAR,

SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL, and DOES 1-10, deprived DECEDENT and Plaintiffs of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of DECEDENT, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

    a.  Employing and retaining as sheriff deputies and other personnel, including HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL who Defendants COUNTY, ALLEN, WCSO and supervisors DOES 6-8, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow WCSO written policies, including the use of excessive and deadly force;

    b.  Of inadequately supervising, training, controlling, assigning, and disciplining HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL and other personnel, including DOES 1-8, who Defendants COUNTY, WCSO, ALLEN, and DOES 6-10 knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for violence and the use of excessive force, including deadly force;

    c.  By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the

intentional misconduct by all Defendants;

d. By failing to discipline HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL, DOES 1-5 and other COUNTY employees' conduct, including but not limited to, unlawful detention and excessive force, including deadly force;

e. By ratifying the intentional misconduct of Defendants HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL, MICHEL and DOES 1-5.

f. By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects. By failing to train and enforce WCSO policies as enumerated herein. The failure to enforce and train deputies to comply with the policies, customs, and practices of COUNTY, ALLEN, WSCO, and DOES 6-8, were done with a deliberate indifference to DECEDENT's and other individuals' safety and rights;

g. By failing to properly investigate claims excessive force by COUNTY employees;

h. failing to institute, train and enforce appropriate policies regarding constitutional procedures and practices for use of force;

i. using excessive force against persons, condoning the use of excessive force, and conspiring to cover-up civil rights violations;

j. failing to comply with appropriate WCSO policies and procedures regarding recognizing and appropriately responding to combative, erratic, self-destructive, and otherwise harmful conduct by inmates who lack the capacity to understand the consequences of their actions, to avoid harming themselves or others, or to understand and comply

with lawful orders by COUNTY employees as a result of mental illness or mental incapacity, and/or failing to train COUNTY employees as to how to comply with those policies and/or failing to enforce compliance with those policies;

k.  failing to train and enforce appropriate policies and procedures regarding how to safely restrain a mentally ill or mentally incapacitated inmate without harming that inmate at a time when such inmate is behaving combatively, erratically, non-compliantly, or otherwise harmfully as a result of his or her inability to understand the consequences of their actions, to avoid harming themselves or others, or to understand and comply with lawful orders by COUNTY employees as a result of mental illness or mental incapacity; and,

l.  Totally inadequate training of its correctional deputies, Sheriff's deputies, correctional facility employees and other COUNTY employees, including defendants HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL and DOES 1-5, on the aforementioned policies and tactics, including the appropriate use of force, despite clear need for such training.

m.  By allowing other inmates to die at the hands of deputies including Niko Smith and Tom Purdy all within one year and failing to discipline any of the involved deputies thereby creating a culture where such use of force goes unpunished and is perpetuated.

n.  By violating multiple WCSO policies as enumerated above.

82. By reason of the aforementioned policies and practices of Defendants, and WCSO DECEDENT was severely injured and subjected to fear, pain, suffering, humiliation, death and other deprivations of his rights as alleged above.

83. Defendants identified herein, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the rights of DECEDENT and other individuals similarly situated.

84. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY, WCSO; ALLEN, HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL and DOES 1-8, acted with an intentional, reckless, and callous disregard for the life, safety, and rights of DECEDENT. Defendants COUNTY, WCSO, HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL and DOES 1-8, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

85. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants COUNTY, ALLEN, WCSO, and DOES 6-8, were affirmatively linked to and were a significantly influential force behind the injuries, suffering, pain, and death of DECEDENT.

86. By reason of the aforementioned acts and omissions of Defendants COUNTY, ALLEN, WCSO, and DOES 6-8, DECEDENT experienced extreme fear, pain, suffering, humiliation, death, deprivation of rights and other injuries and damages.

87. Accordingly, all Defendants are liable to DECEDENT and Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

COMPLAINT FOR DAMAGES

88. Plaintiffs KAREN THOMPSON, individually, and RICK THOMPSON, individually, are seeking both survival and wrongful death damages under this claim.

89. Plaintiff ESTATE OF JUSTIN THOMPSON is seeking survival damages under this claim.

90. Plaintiffs also seek attorney fees under this claim.

**FOURTH CLAIM FOR RELIEF**

**Substantive Due Process (42 U.S.C. § 1983)**

**(The Estate of Justin Thompson, and Karen Thomson and Rick Thompson, as Individuals against All Defendants)**

91. Plaintiffs reallege and incorporate all foregoing paragraphs.

92. DECEDENT had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience.

93. Plaintiffs KAREN THOMPSON, individually, and RICK THOMPSON, individually, each had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in their familial relationship with their son, DECEDENT.

94. The aforementioned actions of all Defendants along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

95. As a direct and proximate cause of the acts of all Defendants, DECEDENT experienced severe pain and suffering and lost his life.

96. All Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT.

97. Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

98. The conduct of all Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages

99. Plaintiffs KAREN THOMPSON, individually, and RICK THOMPSON, individually, are seeking both survival and wrongful death damages under this claim.

100. Plaintiff ESTATE OF JUSTIN THOMPSON is seeking survival damages under this claim.

101. Plaintiffs also claim funeral and burial expenses, punitive damages, and attorney's fees under this claim.

**FIFTH CLAIM FOR RELIEF**

**Battery (Wrongful Death)**

**(The Estate of Justin Thompson, and Karen Thompson and Rick Thompson as Individuals against All Defendants)**

102. Plaintiffs reallege and incorporate all foregoing paragraphs.

103.  All Defendants, while working as sergeants, deputies, agents and/or deputies for the WCSO and acting within the course and scope of their duties, intentionally used excessive force against DECEDENT during their final altercation with him on the evening of August 4, 2016 after his second visit to Renown. Defendants used excessive force by jumping on DECEDENT and holding him down at that time, kneeling on him, placing him on his stomach and causing him to be unable to breathe and ultimately causing him to suffer cardiac arrest. Defendants also obviously beat DECEDENT causing him to suffer abrasions and contusions on his forehead, ears, shoulders, chest, arms, legs, knees and feet, as described in the autopsy report. DECEDENT even suffered a fractured posterolateral right 10th rib, an atypical location for resuscitation, due to blunt trauma.

104. All Defendants, also while working as sergeants, deputies, agents and/or deputies for the WCSO and acting within the course and scope of their duties, integrally participated or failed to intervene in the beating.

105.  As a result of the actions of all Defendants, DECEDENT suffered severe pain and suffering and ultimately died from his injuries.

106.  All Defendants had no legal justification for using deadly force against DECEDENT, and said Defendants' use of force while carrying out their duties as sergeants or deputies for the WCSO and COUNTY was an unreasonable and excessive use of force under the circumstances.

107.  As a direct and proximate result of the conduct of all Defendants as alleged above, Plaintiffs and DECEDENT suffered extreme and severe mental anguish and pain and have been injured in mind and body.

108.  Defendant WCSO AND COUNTY is vicariously liable for the wrongful acts of all Defendants under Nevada law.

109.  The conduct of all Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and DECEDENT, entitling Plaintiffs, in each case individually and as administrators of the estate of DECEDENT, to an award of exemplary and punitive damages as to all individual Defendants.

110.  Plaintiffs KAREN THOMPSON, individually, and RICK THOMPSON, individually, are seeking both survival and wrongful death damages under this claim.

111.  Plaintiff ESTATE OF JUSTIN THOMPSON is seeking survival damages under this claim.

**SIXTH CLAIM FOR RELIEF**

**Negligence (Wrongful Death)**

**(The Estate of Justin Thompson, and Karen Thompson and Rick Thompson as Individuals against All Defendants)**

112.  Plaintiffs reallege and incorporate all foregoing paragraphs.

113.  The actions and inactions of all Defendants were negligent and reckless, including but not limited to:

    a.  the failure to properly and adequately assess the need to use force or deadly force against DECEDENT;

    b.  the negligent tactics and handling of the situation with DECEDENT;

    c.  the failure to provide prompt medical care to DECEDENT;

    d.  the failure to properly train and supervise employees, both professional and non-professional, including Defendants WCSO; ALLEN; HILL, HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL, and DOES 1-10;

    e.  the failure to ensure that adequate numbers of employees with

appropriate education and training were available to meet the needs of and protect the rights of DECEDENT and comply with Washoe County Sheriff Office Policies as set forth in previous paragraphs.

114. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

115. The WCSO and COUNTY is vicariously liable for the wrongful acts of all Defendants because a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

116. Plaintiffs KAREN THOMPSON, individually, and RICK THOMPSON, individually, are seeking both survival and wrongful death damages under this claim.

117. Plaintiff ESTATE OF JUSTIN THOMPSON is seeking survival damages under this claim.

**SEVENTH CLAIM FOR RELIEF**

**Due Process—Interference with Familial Relationship (42 U.S.C. § 1983)**

**(Karen Thompson and Rick Thompson as Individuals against All Defendants)**

118. Plaintiffs incorporate all foregoing paragraphs herein.

119. Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state

actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiffs' familial relationship with their son, DECEDENT.

120. The aforementioned actions of all Defendants, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

121. All Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT.

122. As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

123. The conduct of all Defendants HILL; HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL and DOES 1-5 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to all the individual Defendants only.

124. Plaintiffs seek wrongful death damages under this claim in their individual capacities.

## **EIGHTH CLAIM FOR RELIEF**

### **Violations of 42 USC § 12101, *et seq.***

### **(The Estate of Justin Thompson against All Defendants)**

125. Plaintiffs incorporate all foregoing paragraphs herein.

126. DECEDENT was disabled and as such suffered from mental impairments that substantially limited one or more of his major life activities. As an arrestee and pretrial detainee of the WCSO DECEDENT was qualified to receive the benefits of Defendants' compliance with their obligations under the Fourth and Fourteenth Amendment of the United States Constitution, other applicable Federal and State laws, including WCSO written policies and reasonable accommodations including monitoring and/or other protective measures as necessary to ensure he had access to medical and/or other staff trained and able to address his needs arising from his mental disability, and/or being transferred to a facility that could provide those or similar accommodations for his disability. Using untrained staff, and generally exhibiting deliberate indifference both objectively and subjectively to the medical and safety needs of inmates including decedent violated these obligations.

127. Defendants' violations of those obligations and failure to provide the aforementioned reasonable accommodations deprived DECEDENT of medical and safety needs that were reasonably safe.

128. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died. Also as a direct and proximate result of Defendants' conduct as alleged above, DECEDENT suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and

sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests entry of judgment in their favor and against Defendants COUNTY, ALLEN, HILL, HOSPODAR, SOLANO, PEEK, CAMERON, HUBBELL, MUSTAFA, TONE, MICHEL, WCSO and Does 1-10, inclusive, as follows:

A.    For compensatory damages, including wrongful death damages under federal and state law, in the amount to be proven at trial;

B.    For funeral and burial expenses;

C.    For punitive damages against the individual defendants in an amount to be proven at trial;

D.    For pre- and post-judgment interest at the maximum legal rate;

E.    As to the first, second, third and fourth causes of action, reasonable attorneys' fees and litigation expenses and costs pursuant to 42 USC 1988;

F.    As to the first, second, third, fourth and seventh causes of actions, reasonable attorneys' fees and litigation expenses and costs pursuant to 42 USC 12205;

G.    For costs of suit as to all causes of action; and

H.    For such further other relief as the Court may deem just, proper, and appropriate.

Dated: June 29, 2017                      PETER GOLDSTEIN LAW CORP


                                          BY /s/ Peter Goldstein
                                          PETER GOLDSTEIN, ESQ.

30

*Attorney for Plaintiffs*
KAREN THOMPSON, individually and as Special Administrator of the ESTATE OF JUSTIN THOMPSON; and
RICK THOMPSON, individually and as Special Administrator of the ESTATE OF JUSTIN THOMPSON

## DEMAND FOR JURY TRIAL

Dated: June 29, 2017

BY /s/ Peter Goldstein
PETER GOLDSTEIN, ESQ.
*Attorney for Plaintiffs*
KAREN THOMPSON, individually and as Special Administrator of the ESTATE OF JUSTIN THOMPSON; and
RICK THOMPSON, individually and as Special Administrator of the ESTATE OF JUSTIN THOMPSON

COMPLAINT FOR DAMAGES